328 S.E.2d 506

**STATE of West Virginia**

v.

**Ray R. MAXWELL.**

**No. 16308.**

Supreme Court of Appeals of West Virginia.

March 28, 1985.

Lary D. Garrett, Garrett & Garrett, Moorefield, for appellant.

Catherine A. McMullen, Asst. Atty. Gen., Charleston, for appellee.

BROTHERTON, Justice:

Two United States Navy agents, Henry J. Pataky and Thomas Herman, were conducting an investigation of drugs being sold to Navy personnel. As part of their investigation they obtained information that Maxwell's Tavern, located in Brandywine, West Virginia, operated by the appellant, was in the business of selling drugs. They met with officers of the West Virginia Department of Public Safety in Harrisonburg, Virginia, and requested their cooperation in coordinating the investigation and arrest of non-Navy personnel.

On July 20, 1983, Agent Pataky went to Maxwell's Tavern. He was working alone, without Thomas Herman, on this occasion. While in the tavern, he entered into a conversation with the appellant, Ray Maxwell. During the conversation Agent Pataky asked Mr. Maxwell if he knew where he could get any drugs. Mr. Maxwell answered that he was expecting a shipment that evening and it should be in around 10:00 P.M. Agent Pataky left and returned to the tavern around 9:45 P.M. with Agent Herman. The marijuana had apparently arrived in the meantime and the appellant sold the two agents a paper bag containing marijuana for $25.00. The next morning Agent Herman returned to Maxwell's Tavern and purchased a second paper bag of marijuana for $25,00, again from the appellant. At the time Agent Herman purchased the bag he was told it was "the last one."

Later in the same day Trooper Leonard E. Lanham of the West Virginia State Police attempted to purchase marijuana from the appellant. However, Mr. Maxwell told him that while he normally did have marijuana, at the time he was temporarily out. Nevertheless, his man from Virginia would be coming in the next day and that he would be bringing in a load of marijuana. The two talked about the use of marijuana in the area and Maxwell said that the sales went pretty quick and that he could possibly deal about a pound a day if he could get it. Lanham returned to Maxwell's Tavern on July 23, 1983, with Trooper Michael R. Jordan, again of the West Virginia State Police. Trooper Lanham asked the appellant if his marijuana had come in yet and Mr. Maxwell replied that it was coming in that afternoon, if Lanham wanted to wait around. The troopers waited in their car.

Maxwell came out a short time later and knocked on the glass and told the two agents that his man from Virginia was there if they still wanted the marijuana. Maxwell then introduced them to Eugene Riggleman, who sold Lanham an ounce of marijuana.

On August 10, 1983, the state police and the Pendleton County Sheriff's Department conducted a joint search of Maxwell's Tavern and Ray Maxwell's dwelling pursuant to a search warrant. The search uncovered roach clips, a suitcase containing a small amount of marijuana seeds, and a small bag of marijuana found in a cracker container.

A grand jury of Pendleton County, West Virginia, returned true bills against the appellant on November 1, 1983, charging him with the following five counts:

> Count 1: Delivery of a schedule 1 controlled substance, on July 23, 1983, to Trooper Lanham;
>
> Count 2: Conspiracy to commit an offense against the State of West Virginia, on July 23, 1983;
>
> Count 3: Delivery of a schedule 1 controlled substance on July 20, 1983, to Special Agent Pataky;
>
> Count 4: Delivery of a schedule 1 controlled substance on July 21, 1983, to Thomas Herman; and
>
> Count 5: Possession with the intent to manufacture and deliver a schedule 1 controlled substance on August 10, 1983.

On January 18, 1984, in the Circuit Court of Pendleton County, West Virginia, a jury returned guilty verdicts on each of the five counts.[1] The appellant appeals his conviction to this Court with thirteen assignments of error which we now address.

## I.

■ The appellant argues that the police violated West Virginia Code § 61–6–11 (1984) by coordinating their activities with United States Navy personnel who were not bona fide residents of West Virginia.[2] While this law may prohibit the police from employing non-residents to do certain police tasks, it in no way prohibits the police from coordinating their activities with another law enforcement agency conducting an investigation in West Virginia. The West Virginia State Police did not "engage or employ" Agents Pataky or Herman of the United States Navy. On the contrary, the Navy sought out the West Virginia State Police. The West Virginia authorities merely coordinated their activities with those of the Navy. Because the activities of the State Police did not fall within the prohibition of the statute, we find that the trial court did not commit error in denying the petitioner's motion to dismiss based on a violation of W.Va.Code § 61–6–11.

■ The petitioner also asserts that the police violated 18 U.S.C. § 1385 (1982)[3], which prohibits the use of the army or air force[4] as a posse comitatus[5] or otherwise to execute the laws of a state. Again, this was not a case in which the Navy was being employed to act as police officers in West Virginia. Instead the Navy had an ongoing investigation and merely coordinated its efforts with those of the West

---

1. In our opinion the facts sufficiently support the verdicts returned.

2. W.Va.Code § 61–6–11 (1984) states in part: It shall be unlawful for any officer in this state to knowingly engage or employ any person not a bona fide resident of West Virginia, at the time of such employment, to do or perform any police duty of any sort therein, or in any way to aid or assist in the execution of the laws of this state.

3. "Whoever, except in cases and under circumstances expressly authorized by the Constitution or Act of Congress, willfully uses any part of the Army or the Air Force as a posse comitatus or otherwise to execute the laws shall be fined not

more than $10,000 or imprisoned not more than two years, or both."

4. Although the statute does not mention the navy, it has been held to apply to that branch of the service also. *See United States v. Walden,* 490 F.2d 372, 374 (4th Cir.1974) *cert. denied,* 416 U.S. 983, 94 S.Ct. 2385, 40 L.Ed.2d 760 (1974).

5. "Posse comitatus" is "[T]he power or force of the county. The entire population of a county above the age of fifteen, which a sheriff may summon to his assistance in certain cases, as to aid him in keeping the peace, in pursuing and arresting felons, etc." Black's Law Dictionary 1046 (5th Ed. 1979).

Virginia State Police. West Virginia authorities did not summon the military agents' assistance. Instead the Navy contacted the West Virginia police. The fact that the Navy's internal investigation happened to uncover wrongs by civilians does not bring the case within the scope of 18 U.S.C. § 1385 or render the Navy agents incompetent as witnesses. *See Hubert v. State*, 504 P.2d 1245, 1246–47 (Okla.Crim. App.1972). Therefore, we again find no error.

■ The petitioner alleged a long list of errors by the trial court, some of which were totally without merit and which we, therefore, dismiss summarily. Included in this list are allegations that marijuana was an herb and therefore improperly classified as a schedule 1 controlled substance under W.Va.Code § 60A–2–204(d)(13) (1984);[6] that a separate jury should have been impanelled for each count;[7] that the prosecuting attorney made improper remarks in his closing statement;[8] that the admission of certain "roach clips" found on the petitioner's premises was improper;[9] and that the affidavit by Trooper Lanham to obtain the search warrant was based partially on the hearsay statements of the navy agents.[10]

Because we can find no errors of the trial court during the course of the trial, we uphold the jury's verdict of guilty and, therefore, affirm the lower court on this point.

6. Totally absurd.

7. The petitioner contended that the trial court erred in denying the appellant's motion for a separate jury panel on each count. We are not of the opinion, however, that the record showed that the appellant was prejudiced by a single trial. "Where a defendant will not be prejudiced by a single, combined trial, the trial court should, in the exercise of its discretion, refuse the defendant's motion to sever." Syl. pt. 8, *State v. Clements*, 175 W.Va. 460, 334 S.E.2d 600 (1985). The trial court, therefore, properly refused the appellant's motion.

8. The prosecuting attorney, in his closing argument, referred to the appellant's use of the terms "pot" and "home grown," stating that "a person who doesn't know anything about it doesn't use those terms." The appellant feels that this unfairly inflamed the jury and was therefore error. No objection, however, was

· II.

■ The appellant also claims that he was denied due process of law because matters were considered during his sentencing hearing which were not brought out on the record. On this issue we feel that the appellant has a meritorious claim.

Before denying the appellant's motion for probation the court heard witnesses, both for and against the defendant. However, one incident on which the court placed great weight was not brought out by any of the witnesses, either in the sentencing hearing or in the trial of the case, nor was it found anywhere in the presentencing report. The incident, which involved a fifteen-year-old girl who was found drinking beer and smoking marijuana at the appellant's tavern, was apparently an event made known to the court outside the sentencing proceeding. The court referred to this incident repeatedly and it was apparent that this was a major factor in the court's consideration of whether the appellant was entitled to probation.

■ While the incident may well have been relevant in determining whether probation should be allowed, its method of presentation was lacking. "[I]n criminal prosecutions it has long been the law that a defendant is entitled to be present at every stage of the proceedings and to cross-ex-

made at the trial court on this matter, and, therefore, we need not consider it on appeal. *See Konchesky v. S.J. Groves & Sons*, 148 W.Va. 411, 414, 135 S.E.2d 299, 302 (1964).

9. During the search of the appellant's tavern the police uncovered several roach clips which were later admitted into evidence. The appellant contends that their admission was error because the roach clips were inflammatory and had no prejudicial value. We disagree. *See, e.g., Castleberry v. State*, 152 Ga.App. 769, 771, 264 S.E.2d 239, 241 (1979) (Roach clips held to be admissible.).

10. "Observations of fellow officers of the Government, engaged in a common investigation are plainly a reliable basis for a warrant applied for by one of their number." *United States v. Ventresca*, 380 U.S. 102, 111, 85 S.Ct. 741, 747, 13 L.Ed.2d 684, 690 (1965).

amine and confront witnesses." *State ex rel. Hawks v. Lazaro*, 157 W.Va. 417, 440, 202 S.E.2d 109, 124 (1974). The right to cross examination is lost, however, if the judge bases his decision on evidence not brought forward at any stage in the trial or sentencing proceeding. Any facts which would have a bearing on the sentencing should be brought out in the presentence report or by witnesses called in open court in the presence of the defendant so that the defendant has an opportunity to refute any derogatory statements and to cross-examine the witnesses. *See People v. Giles*, 70 Cal.App.2d Supp. 872, 884, 161 P.2d 623, 629 (1945); *State v. Simms*, 131 S.C. 422, 424, 127 S.E. 840, 840 (1925).

Because there was a prejudicial error in the sentencing hearing, we vacate the sentence imposed by the lower court and remand the case for a new sentencing hearing consistent with this opinion.

Reversed and remanded.