**Richard Avery WRIGHT, Appellant,**

v.

**The STATE of Texas, Appellee.**

**Nos. 3-87-199-CR, 3-87-200-CR.**

Court of Appeals of Texas, Austin.

April 27, 1988.

Richard J. Miller, Killeen, for appellant.

Arthur C. Eads, Dist. Atty., James T. Russell, Administrative Asst., Belton, for appellee.

Before SHANNON, C.J., and EARL W. SMITH * and ABOUSSIE, JJ.

EARL W. SMITH, Justice.

In no. 3–87–199–CR, the district court found appellant guilty of delivery of less

* Before Earl W. Smith, Justice (Retired) Third Court of Appeals, sitting by assignment. *See*

than 28 grams of methamphetamine, a controlled substance, and assessed punishment at imprisonment for ten years. Tex.Rev. Civ.Stat.Ann. art. 4476–15, § 4.03 (Supp. 1988). In no. 3–87–200–CR, a jury found appellant guilty of delivery of less than 28 grams of heroin, a controlled substance. *Id.* The court assessed punishment in this cause at imprisonment for ten years.

### No. 3–87–199–CR

At the original trial of this cause, appellant entered a plea of guilty and judicially confessed. The district court found that the evidence substantiated appellant's guilt, deferred further proceedings without entering an adjudication of guilt, and placed appellant on probation. Tex.Code Cr.P.Ann. art. 42.12, § 3d (Supp.1988). With appellant's consent, the district court heard the State's motion to revoke probation and proceed to adjudication in conjunction with appellant's trial in our no. 3–87–200–CR. At the conclusion of this trial, the district court revoked appellant's probation, entered an adjudication of guilt, and assessed punishment.

No appeal may be taken from the determination to adjudicate guilt, and an appeal in such a case proceeds as if the adjudication of guilt had not been deferred. Sec. 3d(b). The record in the present cause consists of a transcript only; there is no statement of facts from the original trial. Appellant's brief contains no points of error with respect to his trial in this cause, and our examination of the record discloses no error that should be considered in the interest of justice. Accordingly, the judgment of conviction in this cause will be affirmed.

### No. 3–87–200–CR

In November 1986, members of the Drug Suppression Section of the Criminal Investigation Command at Fort Hood learned

Tex.Gov't Code § 73.012 (Supp.1988).

from a reliable informer that appellant, a civilian, was selling controlled substances to military personnel. After obtaining the approval of his superior officers in San Francisco and Washington, the chief of the Drug Suppression Section, Christopher Stallings, contacted the Harker Heights police and conveyed to them the information concerning appellant's unlawful activities. Thereafter, a plan was developed whereby a member of the Drug Suppression Section, while under surveillance by Harker Heights police, would attempt to purchase heroin from appellant.

■ Pursuant to this plan, on January 29, 1987, military policeman David Zerbe and the informer drove to appellant's residence in an unmarked van. The informer told appellant that Zerbe wanted to purchase $100 worth of heroin and that the two men would return to appellant's house in one hour with the money. Upon their return, appellant entered the van and directed Zerbe to an address in Killeen. Appellant entered this house "to see if the heroin is there," returning to the van with a man identified as Jesse Perez. After telling Perez that he wished to purchase heroin, Zerbe gave appellant $100, who then gave the money to Perez. Perez took the money and drove away in an automobile.

While awaiting the return of Perez, appellant asked Zerbe if he could have some of the heroin Zerbe was buying. Zerbe agreed.

After a few minutes, Perez returned and walked up to the van. Perez handed a clear plastic bag to appellant, who passed it on to Zerbe. Perez also gave a small balloon directly to Zerbe. Both the balloon and the plastic bag were later found to contain heroin.

Immediately after handing the plastic bag to Zerbe, appellant retrieved the bag, told Zerbe he was going to use some, and took the bag into Perez's house. When appellant returned ten minutes later, he was, in Zerbe's words, "mellow and laid back." Perez told Zerbe that appellant had taken some of the heroin.

After appellant returned to the van, Zerbe drove to a convenience store where, on a prearranged signal, appellant was arrested by Harker Heights police.

The indictment in this cause alleges that appellant delivered heroin to Zerbe "by the actual transfer of the said controlled substance from Richard Avery Wright to David D. Zerbe." In its charge, the district court instructed the jury on the law of parties, Tex.Pen.Code Ann. § 7.02 (1974), and authorized appellant's conviction if the jury found that, acting alone or as a party, appellant delivered heroin to Zerbe by actual transfer. In one of his two points of error, appellant contends the evidence does not support the jury's verdict of guilt.

There were two containers of heroin delivered to Zerbe. The first, the balloon, was delivered to Zerbe by actual transfer from Perez. Contrary to appellant's argument, this Court finds the evidence summarized above more than sufficient to establish that appellant was criminally responsible for this delivery. Sec. 7.02(a)(2); *Westfall v. State*, 663 S.W.2d 664 (Tex.App. 1983, pet. ref'd).

The second container of heroin was the small plastic bag. This bag was given to appellant by Perez, who in turn gave it to Zerbe. Appellant urges that this did not constitute an actual transfer from appellant to Zerbe because he did not exercise "dominion and control" over the heroin. *See Davila v. State*, 664 S.W.2d 722 (Tex. Cr.App.1984). However, appellant retrieved the plastic bag from Zerbe, took it into Perez's house, and used some of the heroin before returning the bag to Zerbe. Clearly, appellant had exercised "dominion and control" over the heroin before this latter transfer took place. The point of error is overruled.

In his other point of error, appellant contends the involvement of Zerbe and Stallings in this case was a violation of the Posse Comitatus Act, 18 U.S.C. § 1385, and related federal statutes and regulations.

Therefore, their testimony should have been excluded pursuant to Tex.Code Cr.P. Ann. art. 38.23 (Supp.1988).

The Posse Comitatus Act was originally adopted in 1878 in reaction against the use of federal troops to enforce reconstruction laws. *See* Meeks, Illegal Law Enforcement: Aiding Civil Authorities in Violation of the Posse Comitatus Act, 70 Mil.L.Rev. 83 (1975). The Act reads:

> Whoever, except in cases and under circumstances expressly authorized by the Constitution or Act of Congress, willfully uses any part of the Army or the Air Force as a posse comitatus or otherwise to execute the laws shall be fined no more than $10,000 or imprisoned not more than two years, or both.

18 U.S.C. § 1385. In recent years, the Act has been supplemented and clarified by the passage of additional statutes and the adoption of conforming regulations.[1]

The Act has remained relatively obscure, appearing in only one other reported Texas decision. In *Burns v. State,* 473 S.W.2d 19 (Tex.Cr.App.1971), a civilian volunteer working with the Fort Hood C.I.D. purchased marihuana from the defendant, a member of the military. The volunteer notified the C.I.D. and the Killeen police, and the defendant was arrested. The Court of Criminal Appeals rejected the defendant's argument that the evidence against him had been obtained in violation of the Posse Comitatus Act and therefore should have been suppressed pursuant to art. 38.23.

---

1. 10 U.S.C. § 371:
The Secretary of Defense may, in accordance with other applicable law, provide to Federal, State, or local civilian law enforcement officials any information collected during the normal course of military operations that may be relevant to a violation of any Federal or State law within the jurisdiction of such officials.
10 U.S.C. § 375:
The Secretary of Defense shall issue such regulations as may be necessary to insure that the provision of any assistance (including the provision of any equipment or facility or the assignment of any personnel) to any civilian law enforcement official under this chapter does not include or permit direct participation by a member of the Army, Navy, Air Force, or Marine Corps in an interdiction of a vessel or aircraft, a search and seizure, arrest, or other similar activity unless participation in such activity by such member is otherwise authorized by law.
32 C.F.R. § 213.4:
It is the policy of the Department of Defense to cooperate with civilian law enforcement officials to the maximum extent practicable. Under §§ 213.8 through 213.11, the implementation of this policy is consistent with the needs of national security and military preparedness, the historic tradition of limiting direct military involvement in civilian law enforcement activities, and the requirement of applicable law.
32 C.F.R. § 213.8 (in part):
(a) Acquisition and dissemination. DoD Components are encouraged to provide to Federal, State, or local civilian law enforcement officials any information collected during the normal course of military operations that may be relevant to a violation of any Federal or State law within the jurisdiction of such officials.
32 C.F.R. § 213.10 (in part):
(2) Permissible direct assistance. The following activities are not restricted by the Posse Comitatus Act ... notwithstanding direct assistance to civilian law enforcement officials.
(i) Actions that are taken for the primary purpose of furthering a military or foreign affairs function of the United States, regardless of incidental benefits to civilian authorities. This provision must be used with caution, and does not include actions taken for the primary purpose of aiding civilian law enforcement officials or otherwise serving as a subterfuge to avoid the restrictions of the Posse Comitatus Act. Actions under this provision may include the following, depending on the nature of the DoD interest and the specific action in question:

·　　·　　·　　·

(C) Actions related to the commander's inherent authority to maintain law and order on a military installation or facility.

·　　·　　·　　·

(E) Protection of DoD personnel, DoD equipment, and official guests of the Department of Defense.
(F) Such other actions that are undertaken primarily for a military or foreign affairs purpose.

·　　·　　·　　·

(3) Restrictions or direct assistance. Except as otherwise provided in this enclosure, the prohibition on use of military personnel as a posse comitatus or otherwise to execute the laws' prohibits the following forms of direct assistance:

·　　·　　·　　·

(ii) A search or seizure
(iii) An arrest, stop and frisk, or similar activity.
(iv) Use of military personnel for surveillance or pursuit of individuals, or as informants, undercover agents, investigators or interrogators.

The Court held that while C.I.D. agents may have been active in the investigation of the defendant's activities, they were not shown to have acted as a posse comitatus or otherwise to have executed the laws.

Courts in several other jurisdictions have considered the application of the Act in fact situations similar to this cause. In *People v. Hayes*, 144 Ill.App.3d 696, 98 Ill.Dec. 911, 494 N.E.2d 1238 (1986), a Naval Investigative Services agent learned that the defendant, a civilian, was selling cocaine at an off-base location. The agent contacted the local police and a joint "buy/bust" operation was arranged whereby the agent, acting undercover, purchased cocaine from the defendant who was then arrested by the civilian police. The court rejected the defendant's posse comitatus argument, holding that such coordination between military investigators and civilian police did not violate the Act.

Another similar case is *State v. Maxwell*, 328 S.E.2d 506 (W.Va.1985). Military police learned that the civilian defendant was selling controlled substances at his tavern. The civilian police were notified, and thereafter several buys were made by both military and civilian undercover agents. Finding no violation of the Posse Comitatus Act, the West Virginia Supreme Court wrote:

> [T]his was not a case in which the Navy was being employed to act as police officers in West Virginia. Instead the Navy had an ongoing investigation and merely coordinated its efforts with those of the West Virginia State Police. West Virginia authorities did not summon the military agents' assistance. Instead the Navy contacted the West Virginia police. The fact that the Navy's internal investigation happened to uncover wrongs by civilians does not bring the case within the scope of [the Posse Comitatus Act] or render the Navy agents incompetent as witnesses.

328 S.E.2d at 509. *See also People v. Wells*, 175 Cal.App.3d 876, 221 Cal.Rptr. 273 (1985); *Hubert v. State*, 504 P.2d 1245 (Okla.Cr.App.1972).

The investigation that resulted in appellant's arrest was not begun by the Harker Heights police, and the involvement of the military police was not requested by civilian authorities. To the contrary, appellant came to the attention of the C.I.D. during the course of that agency's investigation of drug dealing and drug use by military personnel, and the civilian police became involved in the investigation at the request of the military. Appellant does not dispute that the detection and prevention of unlawful drug use by military personnel is a legitimate military function. We hold that by contacting the local police and informing them of appellant's unlawful drug dealing, and in coordinating their subsequent investigation with civilian law enforcement officers, who actually arrested appellant, the military police did not violate the Posse Comitatus Act or the related statutes and regulations.

The judgments of conviction are affirmed.