**Larry Charbert HAYES, Petitioner–Appellant,**

v.

**Warden HAWES and Neil F. Hartigan, Attorney General for the State of Illinois, Respondents–Appellees.**

No. 89–1706.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 3, 1990.

Decided Dec. 18, 1990.

Marvin G. Miller, Crain, Cooksey & Veltman, Centralia, Ill., for petitioner-appellant.

Larry C. Hayes, pro se.

Terence M. Madsen, Marcia L. Friedl, Asst. Attys. Gen., Office of Atty. Gen., Chicago, Ill., for respondents-appellees.

Before WOOD, Jr., CUDAHY, and MANION, Circuit Judges.

**PER CURIAM.**

Petitioner–Appellant, Larry Charbert Hayes, an inmate at Centralia Correctional Center filed a petition for writ of habeas corpus under 28 U.S.C. § 2254 in the district court. The parties consented pursuant to 28 U.S.C. § 636(c) to final disposition by a magistrate. The magistrate denied the petition. Hayes appeals.

## I. Background

In September 1983, an agent with the Naval Investigative Service (NIS), a group of civilian federal agents employed by the Navy to conduct its criminal investigations, received information that a sailor, found in possession of cocaine, had purchased the drug at the General Music Arcade across from the Great Lakes Naval Base in North Chicago, Illinois. The NIS agent contacted a detective in the North Chicago Police Department, who told the agent that the police also had information about drug sales at the Arcade. Thereafter, several NIS agents, working in conjunction with several police detectives, placed the Arcade under surveillance.

On November 21, 1983, an undercover NIS agent made arrangements with Hayes to purchase some cocaine. On November 22, 1983, the agent met the petitioner in a restroom in the Arcade, made the controlled purchase, and, using a device provided by the police officers, signalled to them when the transaction was completed. After hearing the signal, the police officers came into the restroom where the transaction had occurred, placed Hayes under arrest, and feigned the arrest of the NIS agent. Subsequent to the arrest, the officers recovered the money that the agent had given Hayes for the cocaine. In addition, the police searched the briefcase from which Hayes had taken the cocaine he sold to the NIS agent. The search revealed significant quantities of cocaine and marijuana.

Petitioner was charged with multiple counts of possession with intent to distribute in state court in Illinois. The public defender appointed to represent Hayes filed a Motion to Suppress on the ground that the search was neither pursuant to a warrant nor justified by exigent circumstances. Hayes also filed a pro se Motion to Suppress, alleging that the evidence was seized in violation of the federal Posse Comitatus Act, 18 U.S.C. § 1385. A hearing was held on both Motions and each was denied. Thereafter, petitioner plead guilty to one count of unlawful delivery and was sentenced to fourteen years in prison.

Following sentencing, Hayes alleged ineffective assistance of counsel and a new attorney was appointed to represent him. The newly-appointed attorney filed a Motion to Vacate the plea. After a hearing on the Motion to Vacate, the court denied relief. On appeal, a third appointed attorney argued only plain error in sentencing. Petitioner unsuccessfully sought leave to file a pro se brief on appeal, raising the Posse Comitatus issue. The Illinois Court of Appeals denied leave to proceed pro se and determined that the trial judge had not abused his discretion in sentencing. Hayes subsequently filed a Petition for Leave to Appeal with the Illinois Supreme Court and a Petition for Writ of Certiorari in the United States Supreme Court which were both denied.

In the petition for post-conviction relief and on appeal of the denial of that petition, court-appointed counsel (a different attorney at each level) argued, *inter alia,* ineffective assistance of trial and appellate counsel in their failure to argue that the federal Posse Comitatus Act provided a basis for suppressing the evidence in this case. After the post-conviction petition was denied initially and on appeal, Hayes filed his petition for writ of habeas corpus in the district court.

## II. Analysis

Initially, we note that there is both a pro se appellant's brief in this case and an appellant's brief filed by counsel. The state maintains, despite this court's denial of a motion to strike the pro se brief, that Hayes is not permitted to engage in hybrid representation, acting both pro se and with appointed counsel. The state relies on cases which prohibit a defendant's

attempt to proceed pro se in the middle of a trial. Those cases arise in response to much different concerns than are presented in this case; therefore, they do not provide support for the proposition that a party represented by counsel is prohibited from filing a pro se brief on appeal in addition to the brief filed on his behalf by counsel. Although there is no Sixth Amendment right to file a pro se brief when the appellant is represented by counsel, nothing precludes an appellate court from accepting the pro se brief and considering the arguments contained therein for whatever they may be worth.

After considering both the pro se brief and the counseled brief, we have determined that the only issue warranting discussion in this case is whether Hayes received ineffective assistance of counsel at the trial and appellate court levels, because of appointed counsel's failure to advance a violation of the Posse Comitatus Act as a basis for suppression of evidence. In order to prevail on his ineffective assistance claim, the petitioner must establish that counsel's representation fell below an objective standard of reasonableness, and demonstrate that but for counsel's error he would not have plead guilty. *Hill v. Lockhart*, 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985); *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

To evaluate the ineffectiveness claim, we must consider the merits of the underlying allegation that the evidence in this case was seized in violation of either the federal Posse Comitatus Act, 18 U.S.C. § 1385,[1] or 10 U.S.C. § 375,[2] which also restricts military participation in civilian law enforcement activities. Defendant maintains that the involvement of the NIS agents in the

surveillance and the controlled drug transaction in this case was in contravention of the limitations that those statutes impose on military involvement in civilian law enforcement.

Initially, there is a question of whether § 1385, which only expressly refers to the Army and the Air Force, applies to the Navy. In *United States v. Roberts*, 779 F.2d 565 (9th Cir.), *cert. denied*, 479 U.S. 839, 107 S.Ct. 142, 93 L.Ed.2d 84 (1986), the court determined that by its express terms the Act applied only to the Army and the Air Force, and it declined to extend the Act to apply to the Navy. *Id.* at 566. *See also, State v. Short*, 113 Wash.2d 35, 775 P.2d 458 (1989) (court declined to extend the statute beyond its express terms to make it applicable to the Navy). In *United States v. Walden*, 490 F.2d 372 (4th Cir.), *cert. denied*, 416 U.S. 983, 94 S.Ct. 2385, 40 L.Ed.2d 760 (1974), the court concluded that, because of the firmly rooted policy that military participation in law enforcement should be carefully restricted, the Act was applicable to all branches of the armed services, despite its failure to name all of the branches in its text. *See also United States v. Ahumedo–Avendano*, 872 F.2d 367, 372 n. 6 (11th Cir.), *cert. denied*, —— U.S. ——, 110 S.Ct. 100, 107 L.Ed.2d 63 (1989) (collecting cases and noting that a majority of courts considering the application of the statute to the Navy have concluded that the statutory prohibitions apply).

We need not, for the purposes of this case, determine our view of the conflict existing between the circuits. It is unnecessary, because 10 U.S.C. § 375 and the regulations promulgated thereunder at 32 C.F.R. §§ 213.1–213.11, make the proscrip-

1. 18 U.S.C. § 1385 provides:

Whoever, except in case and under circumstances expressly authorized by the Constitution or Act of Congress, willfully uses any part of the Army or the Air Force as a posse comitatus or otherwise to execute the laws shall be fined not more than $10,000 or imprisoned not more than two years, or both.

2. 10 U.S.C. § 375 provides:

The Secretary of Defense shall prescribe such regulations as may be necessary to ensure that any activity (including the provision of any equipment or facility or the assignment or detail of any personnel) under this chapter does not include or permit direct participation by a member of the Army, Navy, Air Force, or Marine Corps in a search, seizure, arrest, or other similar activity unless participation in such activity by such member is otherwise authorized by law.

tions of § 1385 applicable to the Navy[3] and serve to limit its involvement with civilian law enforcement officials. Consequently, § 1385 is relevant to this case in the sense that the case law interpreting that statute provides a basis for interpreting § 375 and its prohibition against enforcement of the law by the Navy.

■ In arguing that the evidence in this case was seized illegally, Hayes relies primarily upon *Taylor v. State*, 645 P.2d 522 (Okla.Cr.1982). In *Taylor*, the court found a violation of the Posse Comitatus Act and applied an exclusionary rule to suppress the evidence seized in violation of the statute. Petitioner's reliance on *Taylor* is misplaced. The military police officer's involvement in the *Taylor* case was pervasive; he actively participated in the undercover purchase, he pulled a gun during the arrest, he participated in the search of the defendant's house after the arrest, and he took possession of the drugs following the arrest, delivering them to the police station for testing. The court found that military participation of this magnitude was excessive and on the facts of the case decided that the application of an exclusionary rule was justified. *Id.* at 525.

In this instance, the NIS agent's involvement in the drug transaction and subsequent arrest was far removed from that in *Taylor*. The agents herein merely shared information about drug activity at the Arcade with the police department, aided the police in the surveillance of the Arcade, made the undercover buy, and signalled to the police when the transaction was completed. Unlike in the *Taylor* case, the NIS agents did not become involved in any of the activities typically performed by the police, namely the arrest, the search of the premises where the transaction occurred, the seizure of the evidence, or the transportation of that evidence to the station for testing. In this case, the NIS agent's activities were much like those of an undercover civilian cooperating with the police in a controlled drug transaction.

A majority of courts that have addressed the issue presented in this case have noted that where military involvement is limited and where there is an independent military purpose of preventing illicit drug transactions to support the military involvement, the coordination of military police efforts with those of civilian law enforcement officials does not violate either § 1385 or § 375. *See State v. Short*, 113 Wash.2d 35, 775 P.2d 458, 460 (1989) (Where the military employee assumed no greater authority than a private citizen in making an undercover purchase there was no violation of § 375.); *Wright v. State*, 749 S.W.2d 935, 939 (Tex.App.1988) (Military police did not violate Posse Comitatus Act or its related statutes and regulations by contacting local police about known drug activity and coordinating its subsequent investigation with the police.); *People v. Wells*, 175 Cal. App.3d 876, 221 Cal.Rptr. 273, 275 (1985) (Undercover NIS agent's participation in undercover narcotics transaction in cooperation with local law enforcement did not violate the federal Posse Comitatus Act.); *State v. Maxwell*, 328 S.E.2d 506, 509 (W.Va.1985) (Where the Navy had an ongoing drug investigation and merely coordinated its efforts with the West Virginia State Police, there was no violation of the Act.); *Harker v. State*, 663 P.2d 932, 936 (Alaska 1983) ("In the majority of cases in which no violation has been found, the independent military purpose that justified the military conduct was the prevention of illicit drug transactions involving active duty military personnel regardless of whether such conduct took place on military installations.").

The federal courts that have construed these statutes have reached similar conclusions concerning the magnitude of military involvement needed before a violation of the statutes will be found. In *Walden*, the court determined that where the military served as the principal investigators of civilian criminal activity there was a violation of the Act. 490 F.2d at 376. In *United States v. Hartley*, 678 F.2d 961, 978 (11th Cir.1982), *cert. denied*, 459 U.S. 1170, 103

---

3. In fact, 23 C.F.R. § 213.10 specifically incorporates § 1385 and notes that it provides the primary restriction on military participation in civilian law enforcement activities.

S.Ct. 815, 74 L.Ed.2d 1014 (1983), the court noted that before military involvement in a criminal investigation is in violation of the Act, it must amount to "military permeation of civil law enforcement." Similarly, in *United States v. Hartley*, 796 F.2d 112, 114 (5th Cir.1986), the court noted that the military involvement in the investigation must be "pervasive" in order to constitute a violation of the Act. In addition, the court in *United States v. Bacon*, 851 F.2d 1312 (11th Cir.1988), concluded that because the military participation in the investigation "did not pervade the activities of civilian officials, and did not subject the citizenry to the regulatory exercise of military power," it did not violate the Act. *Id.* at 1313.

In light of the pervasive nature of military activity required before the courts interpreting the statutes have found a violation thereof, it is apparent that there has been no violation of § 375 in this case. In this instance, the NIS agents served the same type of function as an undercover civilian cooperating in a drug investigation. Their participation is not sufficiently pervasive to rise to the level of enforcement of the law by the Navy; therefore, that activity does not fall within the boundaries of excessive military involvement in civilian law enforcement to fall within the proscriptions of the statute. We find no violation of § 375 in this case.

 Finally, we note that a majority of the courts which have addressed the issue presented in this case have steadfastly refused to apply the exclusionary rule to evidence seized in violation of the statute and its related regulations, absent widespread and repeated violations, neither alleged nor apparently present in this case. *See Bacon*, 851 F.2d at 1313; *Hartley*, 796 F.2d at 115; *Roberts*, 779 F.2d at 568; *United States v. Wolffs*, 594 F.2d 77, 85 (5th Cir.1979); *Walden*, 490 F.2d at 377. Thus, even if the petitioner could establish that the evidence was seized in violation of § 375, he has not alleged sufficiently widespread violations to justify the suppression of evidence in this instance. The petitioner cannot establish that the pursuit of the

suppression issue by trial and appellate counsel would have altered the outcome of the proceedings; therefore, he has not satisfied the prejudice requirement of *Strickland*, and his ineffective assistance claim is without merit. The district court's denial of the petition for writ of habeas corpus is

AFFIRMED.