The STATE of Texas, Appellant,

v.

Beatrice GUNTER, Appellee.

No. 08–94–00201–CR.

Court of Appeals of Texas, El Paso.

June 22, 1995.

Rehearing Overruled July 26, 1995.

Jaime E. Esparza, Dist. Atty., El Paso, for appellant.

Robert Millard, El Paso, for appellee.

Before LARSEN, McCLURE and CHEW, JJ.

## *OPINION*

LARSEN, Justice.

Appellee was indicted for the offense of delivery of a controlled substance; to wit, cocaine. The indictment alleged four counts of delivery of cocaine, each delivery less than twenty-eight grams. The state brings this appeal from an order granting appellee's motion to suppress evidence. The motion to suppress was granted on the basis of a violation of the federal Posse Comitatus Act, 18 U.S.C.A. § 1385 (1984). We reverse.

No findings of fact or conclusions of law were made in this case. Our decision here is based on the testimony adduced at the hearing on appellee's motion to suppress evidence and the evidence adduced at the suppression hearing is viewed in the light most favorable to the trial court's ruling. *Perez v. State,* 818 S.W.2d 512, 514 (Tex. App.—Houston [1st Dist.] 1991, no pet.) The trial judge is the sole and exclusive trier of fact at a hearing on a motion to suppress. *Romero v. State,* 800 S.W.2d 539, 543 (Tex. Crim.App.1990); *Cannon v. State,* 691 S.W.2d 664, 673 (Tex.Crim.App.1985), cert. denied, 474 U.S. 1110, 106 S.Ct. 897, 88 L.Ed.2d 931 (1986); *Hawkins v. State,* 628 S.W.2d 71, 75 (Tex.Crim.App.1982). On appeal, a reviewing court does not engage in its own factual review but decides whether the trial judge's decision is supported by the record. See *State v. Giles,* 867 S.W.2d 105, 107 (Tex.App.—El Paso 1993, pet. ref'd). If the record supports the court's decision, this Court is not at liberty to disturb the trial court's decision and, on review, we address only the question of whether the trial court improperly applied the law to the facts. See e.g., *Romero,* 800 S.W.2d at 543; *Self v. State,* 709 S.W.2d 662, 664–65 (Tex.Crim.App. 1986); *Johnson v. State,* 698 S.W.2d 154, 159 (Tex.Crim.App.1985), cert. denied, 479 U.S. 871, 107 S.Ct. 239, 93 L.Ed.2d 164 (1986). Furthermore, we must consider the totality of the circumstances in determining whether the trial court's decision is supported by the record, and the decision will not be disturbed absent a clear abuse of discretion. See *Dancy v. State,* 728 S.W.2d 772, 777 (Tex.Crim. App.1987), cert. denied, 484 U.S. 975, 108 S.Ct. 485, 98 L.Ed.2d 484 (1987).

If the trial judge's decision is correct on any theory of law applicable to the case, however, it will be sustained. *Romero,* 800 S.W.2d at 543; *Calloway v. State,* 743 S.W.2d 645, 652 (Tex.Crim.App.1988). In the instant case, the trial court judge did not specify under which theory he found the evidence inadmissible. One theory appellee advanced in her motion to suppress was that of an illegal detention under the Fourth, Sixth, and Fourteenth Amendments of the United States Constitution and Article I, § 9 of the Texas Constitution. However, there is no testimony or evidence in the record addressing this theory, nor can we find any basis for suppressing the evidence under such a theory.

The evidence presented at the hearing on appellee's motion to suppress is as follows. William Morrow was a military policeman assigned to the Criminal Investigation Division (C.I.D.) at Fort Bliss, Texas. His duties included undercover investigation of cases of drug sales and usage among military personnel. Morrow met appellee at an off-post establishment, the Clover Club, while he was investigating another individual selling drugs to soldiers. Through the course of a conversation with appellee, she offered to sell Morrow drugs. Morrow's first transaction with appellee, a cocaine buy, occurred on Halloween night. After Morrow obtained the drugs from appellee he went back to his office to test the substance to make sure it was cocaine. The next day

Morrow turned the drugs over to the El Paso Police Department. Specifically, Morrow contacted Detective Luis Size, his liaison with the police department. Morrow informed Size of the details of the drug transaction and made sure there was not already an on-going investigation of appellee. Morrow testified that Size never initiated contact with the C.I.D. The normal procedure concerning investigations of individuals selling drugs to military personnel is for an undercover military agent to target an individual and then contact the police department to let them know about the investigation so that the two entities can conduct a joint investigation. Morrow, accompanied by another C.I.D. agent named Richard McIntyre, conducted two more transactions with appellee. After each transaction, Morrow contacted Size, informed him of what had transpired, and turned the evidence over to the police department.

McIntyre stated that before the undercover agents could conduct an investigation of a civilian selling drugs, they would have to find a military connection or interest in the transactions. The military connection in the instant case was the Clover Club's reputation as a place where military personnel could obtain drugs. McIntyre testified that use of illicit narcotics by military personnel operating high-tech equipment could result in a serious incident. The C.I.D. unit at Fort Bliss sought and received approval to make drug purchases from appellee. The joint investigative effort between the C.I.D. and the police department consisted of the C.I.D. agents identifying the drug traffickers, initiating and making the purchases, and turning the evidence over to the police, at which point the police department as the lead agency would conduct the laboratory tests of the drugs and work up the warrants.

Detective Size testified that the extent of his involvement occurred after Morrow and McIntyre completed their drug purchases from appellee. They turned the drugs over to Size and he prepared the case for presentation to the district attorney's office. Size stated he never asked Morrow or McIntyre to meet with appellee to attempt to make a drug transaction, but that it was the agents who contacted Size after each transaction.

In a single point of error, the state argues the involvement of Morrow and McIntyre in this case did not violate the Posse Comitatus Act (Act). The Act provides:

Whoever, except in cases and under circumstances expressly authorized by the Constitution or Act of Congress, willfully uses any part of the Army or the Air Force as a posse comitatus or otherwise to execute the laws shall be fined not more than $10,000 or imprisoned not more than two years, or both. 18 U.S.C.A. § 1385 (1984).

Only two reported Texas cases have addressed the Act. The first, *Burns v. State*, 473 S.W.2d 19 (Tex.Crim.App.1971), involved a civilian volunteer working with the Fort Hood C.I.D. Using marked money, the volunteer purchased narcotics from off-duty soldiers. *Id.* at 20. After the purchase, the volunteer took the drugs to police who notified C.I.D. *Id.* On motion for rehearing, the Court found no part of the Armed Forces was used to *execute the laws*. *Id.* at 21 (emphasis in original). The Court stated that the volunteer was not a member of the military and although the C.I.D. agents may have been active in the investigation of narcotics traffic including the appellant's activities, they could not be shown to have acted as a posse comitatus or otherwise to have executed the laws. *Burns*, 473 S.W.2d at 21.

The facts in the second case, *Wright v. State*, 749 S.W.2d 935 (Tex.App.—Austin 1988, pet. ref'd), are very similar to the facts in the case at bar. In *Wright*, members of the Drug Suppression Section of the Criminal Investigation Command at Fort Hood learned that a civilian was selling controlled substances to military personnel. *Id.* at 936–37. The chief of the Drug Suppression Section received permission to contact the Harker Heights police and provide them with information concerning the appellant's unlawful activities. *Id.* at 937. A plan developed whereby a member of the Drug Suppression Section, while under surveillance by Harker Heights police, would attempt to purchase drugs from the appellant. *Id.* Pursuant to the plan, a military policeman bought drugs

from the appellant and upon a prearranged signal, the appellant was arrested by Harker Heights police. *Id.* In reaching its decision that the military police did not violate the Act, the Court specifically noted that the investigation was not begun by the Harker Heights police. *Id.* at 939. Instead, the C.I.D. informed the police of the appellant's activities and requested the help of the police in the investigation. *Id.* Further, it was the Harker Heights police who actually arrested the appellant. *Id.*

Although the Act is relatively obscure in Texas law, courts in several other jurisdictions have applied the Act to similar fact situations. In *Burkhart v. State,* 727 P.2d 971 (Okl.Cr.1986), a military agent with the C.I.D. at Fort Sill, Oklahoma was involved in covert drug investigations. The agent's investigations lead him to the appellant as a source of drugs supplied to military personnel. *Id.* at 972. Thereafter, the agent notified the Lawton Police Department of his information. *Id.* The police department provided the agent with funds to purchase the drugs and even sent a police officer to accompany the agent on one of the transactions. *Id.* The Court held the facts did not give rise to a violation of the Posse Comitatus Act. *Id.* In reaching its decision, the Court looked to one of its earlier decisions in which it found the Act was not violated because the military agent did not attempt to arrest the defendant, nor did he attempt to assert any military authority over the defendant. *Id.* Particularly, the Court held that the agent "did not assume any greater authority than that of a private citizen in purchasing the marijuana...." *Id.*

A majority of courts have also noted that where military involvement is limited and where there is an independent military purpose of preventing illicit drug transactions to support the military involvement, the coordination of military police efforts with those of civilian law enforcement does not violate the Act. See *Hayes v. Hawes,* 921 F.2d 100, 103 (7th Cir.1990); *State v. Maxwell,* 174 W.Va. 632, 328 S.E.2d 506, 509 (1985). Where the military participation in an investigation does not pervade the activities of civilian officials, and does not subject the citizenry to the regulatory exercise of military power, it does not violate the Act. See *United States v. Bacon,* 851 F.2d 1312, 1313 (11th Cir.1988).

Like the investigation in *Wright,* the investigation resulting in appellee's indictment was not initiated by the El Paso Police Department, nor was it conducted at their request. Instead, the C.I.D. agents identified appellee as a drug trafficker, set up several deals and purchased drugs from her, and only *after* the transactions did they inform the police of the events that took place. The police department became involved in the investigation at the request of the military. We hold that the facts of this case do not amount to a violation of the Posse Comitatus Act, and even giving the trial court the deference due under a challenge to a ruling on a motion to suppress, we hold that the trial court erred in applying the law to the facts here.

Finally, it is important to note that a majority of courts that have addressed this issue have refused to apply the exclusionary rule to evidence seized in violation of the Act. See *Bacon,* 851 F.2d at 1313; *United States v. Griley,* 814 F.2d 967, 976 (4th Cir.1987); *United States v. Wolffs,* 594 F.2d 77, 85 (5th Cir.1979). Although in *Lee v. State,* 513 P.2d 125 (Okl.Cr.1973), the Court found a violation of the Act, such violation did not mandate exclusion of the evidence in question since the military agent did not attempt to arrest the defendant, nor did he attempt to assert military control over him. Likewise, the Court in *United States v. Walden,* 490 F.2d 372 (4th Cir.1974), declined to impose the extraordinary remedy of an exclusionary rule due to the absence of widespread or repeated violations of the Act. Thus, even if the military's participation in the investigation of appellee had given rise to a violation of the Act, it is uncertain whether suppression of the evidence seized would be the appropriate remedy in any event.

We reverse the trial court's order granting appellee's motion to suppress, and remand for further proceedings in accordance with this opinion.