129 F.3d 120
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Tony MONTGOMERY, Defendant-Appellant.
 Nos. 96-1303, 97-1313.
 United States Court of Appeals, Seventh Circuit.
 Oct. 1, 1997.
 
 Appeal from the United States District Court for the Northern District of Illinois, Eastern Division, No. 94 CR 655; Ann Clare Williams, Judge.
 Before CUMMINGS, WOOD, Jr., and WOOD, Circuit Judges.
 
 ORDER
 
 1
 The defendant, Tony Montgomery ("Montgomery"), appeals from his convictions for knowingly and intentionally distributing crack cocaine and from the district court's order denying his motion for a new trial. Montgomery contends that he is entitled to new trial because the government failed to provide him with copies of a testifying officer's typewritten notes and a search warrant and complaint before trial. Because we find that neither document contains any material favorable evidence, we affirm.
 
 Background
 
 2
 On three different occasions in the summer of 1994, Montgomery sold various amounts of crack cocaine to a person who was cooperating with the Chicago Police Department. In October 1994 the Chicago police arrested Montgomery and obtained and executed a warrant to search Montgomery's apartment. Police recovered approximately 133 grams of crack cocaine, cash and a drug ledger from Montgomery's apartment.
 
 
 3
 Montgomery was indicted on three counts of knowingly and intentionally distributing cocaine in violation of 21 U.S.C. § 841(a)(1), stemming from the three completed sales, and one count of possessing cocaine with the intent to distribute also in violation of 21 U.S.C. § 841(a)(1), stemming from the cocaine which police recovered from his apartment. At trial, the government presented testimony from several Chicago police officers who had observed the completed sales and testimony from the cooperating person. Additionally, the government introduced into evidence a police surveillance videotape and audiotapes of one of the transactions. In his defense, Montgomery argued that Chicago police were framing him and that the police had fabricated the tapes. A jury convicted Montgomery of the three counts of distribution, but acquitted him of the possession count.
 
 
 4
 After the trial, the government discovered typed notes of the videotaped sale written by Officer Baker, one of the observing officers. Montgomery appealed his conviction contending that the government's failure to disclose the notes violated his due process rights. However, because Montgomery based his claim on newly discovered evidence, we directed Montgomery to file a motion for a new trial in the district court pursuant to Federal Rule of Criminal Procedure 33. United States v. Montgomery, No. 96-1303 (7th Cir. Oct. 24, 1997). The district court denied his Rule 33 motion, and he appealed the denial contending that the government's failure to disclose the officer's notes and a search warrant and the complaint for the search warrant violated his due process rights. We consolidated his appeals.
 
 Discussion
 
 5
 Due process mandates that the prosecution disclose to the defendant all favorable evidence material to either guilt or punishment. Brady v. Maryland, 373 U.S. 83, 87 (1963). Thus, to establish Brady error, the defendant must demonstrate that (1) the government suppressed evidence, (2) the suppressed evidence was favorable to the defense, and (3) the suppressed evidence was material to an issue at trial. United States v. Silva, 71 F.3d 667, 670 (7th Cir.1995). Evidence is favorable to the defense if it is exculpatory, see Brady, 373 U.S. at 87-88, or if it may have been helpful to the defense in impeaching government witnesses on cross-examination. United States v. Bagley, 473 U.S. 667, 678 (1985). Evidence is material if a reasonable probability exists that had the evidence been disclosed to the defense prior to trial, the outcome of the trial would have been different. Kyles v. Whitley, 514 U.S. 419, 433-34 (1995). To establish a reasonable probability that the outcome of the trial would have been different, a defendant need not demonstrate by a preponderance of the evidence that disclosure of the suppressed evidence would have resulted in an acquittal, nor need he show that in light of the suppressed evidence, the inculpatory evidence is insufficient to support the verdict. Id. at 434-35. Rather, a reasonable probability of a different result exists when the suppressed evidence undermines confidence in the outcome of the trial. Id. at 434.
 
 
 6
 Neither party disputes that the government failed to disclose the documents. Therefore, Montgomery has cleared the first hurdle in establishing Brady error. However, like the district court, we are skeptical that Officer Baker's notes contain any information favorable to the defense. Officer Baker's notes amount to a one-page synopsis of the August 17 transaction which closely parallels Baker's testimony at trial. Nothing in the notes exculpates Montgomery. Likewise, we do not believe that anything in the notes would have been helpful to defense counsel in conducting his cross-examination of Baker.
 
 
 7
 Montgomery argues that the notes are favorable to his defense because the notes contradict portions of the surveillance videotape, thereby tending to support his theory that the tape was fraudulent. For example, he points out that Baker's notes do not state that the police made a surveillance tape of the transaction. However, contrary to Montgomery's assertion, Officer Baker's failure to refer to the videotape does not equate to his affirmatively denying that the police videotaped the transaction. Baker did not testify that he participated in creating the videotape. He merely pointed out the location of his car on the videotape. Additionally, another officer testified affirmatively that Baker was not responsible for creating the videotape. Thus, Baker's failure to refer to the videotape does not reasonably support the inference that police fabricated the tape. Similarly, Montgomery contends that Baker's notes are inconsistent with the videotape because his notes state that on August 17 Montgomery arrived at a Shell gas station, parked, exited his car and walked to the sidewalk to look around, while the videotape depicts Montgomery driving past the Amoco gas station where the drug sale was suppose to take place before parking at the Shell station across the street. Again the absence of a reference to Montgomery driving past the Amoco station does not affirmatively deny that Montgomery drove past the Amoco station, and at trial, Baker testified consistent with his notes that Montgomery parked at the Shell station, exited and looked around. Thus, we fail to see any inconsistency between the notes and the videotape.
 
 
 8
 Montgomery also argues that defense counsel could have impeached Baker on the basis of several inconsistencies between the notes and his testimony at trial. For example, Montgomery contends that Baker testified that Montgomery vacuumed his car then made a call on his cellular phone, while in his notes Baker reports that Montgomery made a telephone call then vacuumed his car. However, Montgomery mischaracterizes Baker's testimony to create this alleged inconsistency. Contrary to Montgomery's contentions, Baker testified that Montgomery removed a vacuum hose from its rack and placed it in his car, made a telephone call and walked away from his car to look around while he was talking, then returned to his car after he finished the call and vacuumed his car. We discern no inconsistency between the notes and Baker's testimony with respect to this issue.
 
 
 9
 Montgomery arguably does raise two inconsistencies between the suppressed documents and some of the government's proof at trial. First, Montgomery points out that Baker reports in his notes that Montgomery pulled out from his car a brown paper bag and dropped it on the ground and that after a short conversation with Montgomery, the cooperating person retrieved the bag. At trial, Baker testified that Montgomery retrieved a brown paper bag from the ground and dropped it in the cooperating person's car.[1] Admittedly, the notes and Officer Baker's testimony are inconsistent on this point. However, we do not believe this minor inconsistency would have impeached Officer Baker's testimony where the rest of his notes coincide with his testimony at trial and where the inconsistent statements both inculpate Montgomery.
 
 
 10
 Secondly, Montgomery points out that a statement in the complaint for the search warrant possibly contradicts the cooperating person's testimony at trial. As Montgomery notes, in the complaint a Chicago police officer states that a cooperating person attempted to purchase cocaine from Montgomery on October 17, 1994. However, the cooperating person who testified at trial stated that he had last spoken with Montgomery on August 17, 1994--two months before he allegedly negotiated the terms of this fourth sale. While the statement in the complaint is seemingly inconsistent with the cooperating person's testimony, that statement would not necessarily have been helpful to the defense in cross-examining either the cooperating person or the attesting officer. First, the statement in the complaint is the attesting officer's statement rather than the cooperating person's statement. Therefore, defense counsel could not have used it directly to impeach the cooperating person. More importantly, the statement in the complaint does not identify the cooperating person who attempted to purchase cocaine from Montgomery on October 18, and nothing suggests that the cooperating person referred to in the complaint is the same cooperating person who participated in the three undercover buys and testified at trial. Therefore, the complaint does not necessarily contradict the testimony at trial nor would it have necessarily impeached either the attesting officer's credibility or the cooperating person's credibility.
 
 
 11
 Moreover, even if these two documents could be characterized as favorable to the defense on the basis of these alleged inconsistencies, neither of the two documents is material. Taking the two documents together, as we must in determining materiality, Kyles, 514 U.S. at 436, their cumulative effect does not undermine our confidence in the verdict. We do not believe that any inconsistencies between Baker's notes and his testimony or between the complaint for the search warrant and the cooperating person's testimony would have reduced the value of either Baker's testimony, the attesting officer's testimony or the cooperating person's testimony. Additionally, even if the disclosure of these alleged inconsistencies would have reduced the value of Baker's or the cooperating person's testimony, three other police officers testified as to their observations of the three drug sales, and police captured on video and audio tape the August 17 sale which Baker's notes recount. The attesting officer testified for the government in rebuttal only and testified that contrary to his in-court testimony, Montgomery initially claimed he was not the person on the videotape. However, the government also presented two other witnesses who testified to this same denial. Thus, even if the complaint would have reduced the value of the attesting officer's testimony, it would not have weakened the government's case.
 
 
 12
 Likewise, neither of the documents would have strengthened Montgomery's frame-up defense. At trial, Montgomery acknowledged that he was the person on the videotape but contended that the tape actually captured an innocent encounter and that police fabricated the audio tape to create evidence of a drug sale. However, Montgomery offered no evidence to support his theory apart from his own testimony. The fact that one police officer may have lied about an alleged drug deal in October--assuming that Montgomery could have established such a lie based on the complaint--does not support his theory that different police officers fabricated a videotape of a drug sale two months earlier. Additionally, the government effectively rebutted Montgomery's testimony by establishing that Montgomery initially denied that he was even the person on the videotape. As we stated above, although the complaint may have reduced the value of one of these rebuttal witnesses, two other rebuttal witnesses corroborated Montgomery's denial. More importantly, the jury heard Montgomery's voice in court while he was testifying and was able to compare his voice to that of the voice on the audio tape. In light of this overwhelming evidence of guilt, suppression of the two documents does not undermine confidence in the jury's verdict.
 
 
 13
 Finally, we recognize that the allegedly inconsistent statement in the complaint may have weakened the government's case on the possession count because that count stemmed from the cocaine which the police discovered in Montgomery's apartment while executing the search warrant on October 18. However, a jury acquitted Montgomery of the possession count. Thus, the suppressed evidence strengthens rather than undermines our confidence in this verdict. Accordingly, no reasonable probability exists that had the suppressed documents been disclosed, the result of the trial would have been different, and consequently, the suppressed documents are not material. Thus, we AFFIRM Montgomery's convictions.
 
 
 
 [1]
 Montgomery raises this argument in a pro se supplemental brief which he tendered to this court and which we have construed as a motion to supplement the brief. Although a defendant has no Sixth Amendment right to file a pro se brief when he is represented by counsel, an appellate court may accept the brief and consider the arguments contained therein. Hayes v. Hawes, 921 F.2d 100, 102 (7th Cir.1990). To the extent that Montgomery's pro se brief supplements and clarifies his Brady argument, we grant his motion to supplement and consider the arguments contained in his tendered supplemental brief