724 F.Supp. 951 (1989)
UNITED STATES of America
v.
Kyle STOUDER, Defendant.
Cr. No. 89-43-MAC (WDO).
United States District Court, M.D. Georgia, Macon Division.
November 7, 1989.
Miriam W. Duke, Macon, Ga., for plaintiff.
Anthony L. Cochran, Atlanta, Ga., for defendant.

ORDER
OWENS, Chief Judge.
A magistrate of this court on December 18, 1986, issued a search warrant to "U.S. Marshal, his authorized Deputy, Agents of the Federal Bureau of Investigation and any Authorized Officer of the United States" for the search of Northrop Corporation's Warner Robins, Georgia plant which is located across Highway 247 from Robins Air Force Base. The property to be searched was described in the warrant as "time cards, employee logs, microfiche, microfilm, computer tapes and discs, memoranda, charts, and other documentation being evidence of a conspiracy to defraud the government." The seventeen-page affidavit of Federal Bureau of Investigations (FBI) Agent Fred C. Stofer, on the basis of which the search warrant was issued, states among other things that around November 13, 1986, an informer-employee of Northrop Corporation's Warner Robins plant voluntarily contacted Special Agent Gary Kiphart of the Robins Air Force Base Office of Special Investigations (OSI) and told of having been ordered by Northrop Corporation superiors to alter employee time cards which are used by Northrop to certify and bill hours of labor expended by Northrop employees on United States government contracts administered by the United States Air Force. As a result, agents of the FBI and OSI jointly investigated the suggestion that the Air Force *952 was being defrauded by Northrop officials and obtained the factual information set out in FBI Agent Stofer's affidavit.
On December 22, 1986, the search warrant was executed by eight agents of the FBI assisted by three OSI agents since identified in the government's response of September 5, 1989, as Agents Gary Kiphart, Sam Dorsey, and Frank Clemmer, each of whom is a civil service Air Force employee. Also present, but according to the government's response not involved in searching or seizing evidence, were OSI Agents Johnson, Stephens, Stout, and Hoffman, each of whom are Air Force officers. An OSI secretary performing clerical duties and two assistant United States attorneys were also present. The seized evidence described in the nine-page return filed in this court on December 23, 1986, was turned over to agents of the OSI for safekeeping and analysis. Thereafter, the investigation continued to be conducted jointly by the FBI and the OSI.
On April 14, 1989, defendant Kyle Stouder, Plant Manager of Northrop's Warner Robins plant, was indicted by a grand jury of this court on one count of conspiracy to defraud the United States of America and its departments and agencies concerning cost and labor hours expended on government contracts, in violation of 18 U.S.C. § 371, and forty-two counts of submission of false and fraudulent employee time cards and charges to defraud the United States in violation of 18 U.S.C. § 1001.
On June 13, 1989, defendant Stouder moved the court "to suppress the fruits of the search conducted on December 22, 1986, on the grounds that the search and seizure violated the Posse Comitatus Act and the Fourth Amendment." Defendant moved to dismiss on the same grounds and also moved for an evidentiary hearing which was held on October 12, 1989. All submitted by the defendant and the government having been carefully considered, this constitutes the court's ruling on defendant's motion to suppress.

The Posse Comitatus Act
The Posse Comitatus Act, 18 U.S.C. § 1385, states:
Whoever, except in cases and under circumstances expressly authorized by the Constitution or Act of Congress, willfully uses any part of the Army or the Air Force as a posse comitatus or otherwise to execute the laws shall be fined not more than $10,000 or imprisoned not more than two years, or both;
thus making it a crime against the United States for anyone except as authorized by the Constitution or Act of Congress to willfully use any part of the Army or the Air Force as a posse comitatus or otherwise to execute the laws.
In spite of the acknowledged fact that no United States court has ever fashioned an exclusionary rule on account of a violation of the Posse Comitatus Act, defendant urges this court to find that in reality the United States Air Force, using the FBI as its puppet agency, is executing the criminal laws of the United States, thereby itself acting as a posse comitatus or otherwise in such an egregious manner that an exclusionary rule should be fashioned. The defendant in effect says the Air Force is nothing more than the wolf of military might parading in the sheep's clothing of the FBI to do what the Army and Air Force may not doenforce the civil laws of the United States. The United States strongly disputes defendant's contentions, saying in effect that the Posse Comitatus Act does not possibly apply; that if the Act does possibly apply, the Air Force's conduct was, nevertheless, specifically authorized by Act of Congress; and even if not authorized by Act of Congress, the Air Force's conduct was not a willful violation and not sufficient to even begin to justify the fashioning of an exclusory rule.
For the Posse Comitatus Act to possibly apply it is, of course, necessary that the Air Force have been used to execute the laws because that is the statutorily prohibited conduct"willfully uses ... as a posse comitatus or otherwise to execute the laws ..." (emphasis added).
In United States v. McArthur, 419 F.Supp. 186 at 194 (D.N.D.1976), the trial court as to that part of the statute stated:

*953 Returning to the posse comitatus statute with its mandate against the use of a part of the Army or Air Force to "execute" the law; "execute" implies an authoritarian act. I conclude that the feared use which is prohibited by the posse comitatus statute is that which is regulatory, proscriptive or compulsory in nature, and causes the citizens to be presently or prospectively subject to regulations, proscriptions, or compulsion imposed by military authority.
So, here, the standard I apply is this: Were Army or Air Force personnel used by the civilian law enforcement officers at Wounded Knee in such manner that the military personnel subjected the citizens to the exercise of military power which was regulatory, proscriptive, or compulsory in nature, either presently or prospectively?
The standard discussed above was adopted by the Eleventh Circuit in the case of United States v. Hartley, 678 F.2d 961, 978 (11th Cir.1982). In applying this standard to the facts of the present case the question to be first decided is whether Air Force OSI personnel  civilian or military  were used by civilian law enforcement officers (agents of the FBI) in such a manner (in investigating defendant's conduct, executing a search warrant, and in preserving evidence for use at trial) that subjected defendant and other citizens to the exercise of military power which was regulatory, proscriptive, or compulsory in nature, either presently or prospectively. To ask the question is to answer it, for it is obvious that in investigating defendant's possible fraudulent conduct, assisting FBI agents in executing a court-authorized search and preserving seized evidence for use at trial, Air Force personnel were not regulating the conduct of defendant or any other person, were not proscribing any person's conduct, and were not compelling anything of anybody. Air Force personnel  military and civilian  thus were not engaged in the execution of the laws and the Posse Comitatus Act does not possibly apply.
Even if Air Force OSI personnel, in doing all they did, were executing the laws, the Posse Comitatus Act was not violated because an Act of Congress  The Inspector General Act of 1978  expressly authorized the questioned conduct of the OSI personnel.
The purpose and scope of the Inspector General Act were summarized in United States v. Aero Mayflower Transit Co., Inc., 831 F.2d 1142 at 1145 (D.C.Cir.1987).
In 1978, Congress, out of concern over governmental inefficiency, created offices of Inspector General in a number of departments and agencies.1 The Report of the Senate Committee on Governmental Affairs on the legislation referred to "evidence [that] makes it clear that fraud, abuse and waste in the operations of Federal departments and agencies and in federally funded programs are reaching epidemic proportions." S.Rep. No. 1071, 95th Cong., 2d Sess. 4, reprinted in 1978 U.S.Code Cong. & Admin.News 2676, 2679. The Committee blamed these failures in large part on deficiencies in the organization and incentives of executive branch auditors and investigators. The Inspectors General were, therefore, to provide intra-agency cohesion and a sense of mission in the struggle against waste and mismanagement as well as to further important communication between agencies: "[T]he type of coordination and leadership strengthens cooperation between the agency and the Department of Justice in investigating and prosecuting fraud cases." Id. at 6-7, U.S.Code Cong. & Admin.News 1978, pp. 2681-2682. In service of this end, the Act gives the Inspectors General both civil2 and criminal3 investigative authority and subpoena powers coextensive with that authority.4
1 The original Inspector General Act, Pub.L. No. 95-452, 92 Stat. 1101 (1978), did not include an Inspector General for the Defense Department. That office was added by amendment in the Department of Defense Authorization Act for 1983. Pub.L. No. 97-252, § 1117(a)(1), 96 Stat. 718, 750 (1982).
2 See, e.g., 5 U.S.C. app. § 2(2) (1982). Such an investigation might lead, for instance, to a decision by an agency to prohibit certain contractors from bidding on agency contracts or a *954 civil suit to recover sums improperly charged the agency.
3 In addition to Senate Report 95-1071, supra, 1978 U.S.Code Cong. & Admin.News 2676, which demonstrates that "fraud" was taken to encompass criminal fraud, there are provisions in the Act directing a report to the Attorney General whenever there are grounds to suspect violation of federal criminal law, 5 U.S.C. app. § 4(d) (1982), and charging the Department of Defense Inspector General with guidance of all Defense Department activities relating to criminal investigations, id. § 8(c)(5). This latter provision applies only to the Department of Defense Inspector General and is apparently necessary because that office is distinct among Inspectors General in not holding all departmental investigative powers. See H.R.Rep. No. 749, 97th Cong., 2d Sess. 175-76, reprinted in 1982 U.S.Code Cong. & Admin.News 1555, 1569, 1581.
4 Omitted as irrelevant to this court's decision.
The Department of Defense Inspector General, by written instructions published as Attachment 1-D1 to Air Force Regulation 124-21, specified that the United States Air Force Office of Special Investigations along with its Department of Defense, Army and Navy counterparts, would "substantially share the responsibility of conducting investigations of fraud offenses affecting the Department of Defense ...", and also issued detailed instructions as to the conduct of such investigations.
In addition, Congress specified in § 8(g) of the Inspector General Act of 1978 that:
The provisions of section 1385 of title 18, United States Code [the Posse Comitatus Act], shall not apply to audits and investigations conducted by, under the direction of, or at the request of the Inspector General of the Department of Defense to carry out the purposes of this Act.
So, by Act of Congress, the Inspector General of the Department of Defense was authorized directly and through other organizations, including the Air Force OSI, to investigate fraud, and in addition was protected from allegations of violation of the Posse Comitatus Act by a specific provision of the Inspector General Act exempting the type of conduct herein complained about  audits and investigations to carry out the purposes of this Act  from the Posse Comitatus Act. The Posse Comitatus Act was clearly not violated.
Last, and certainly not least, the search warrant, the fruits of which defendant moves to suppress, was issued pursuant to Rule 41(c) of the Federal Rules of Criminal Procedure and 18 U.S.C. § 3105 which provides:
Rule 41. Search and Seizure
* * * * * *
(c) Issuance and Contents.
(1) Warrant Upon Affidavit. A warrant other than a warrant upon oral testimony under paragraph (2) of this subdivision shall issue only on an affidavit or affidavits sworn to before the federal magistrate or state judge and establishing the grounds for issuing the warrant. If the federal magistrate or state judge is satisfied that grounds for the application exist or that there is probable cause to believe that they exist, that magistrate or state judge shall issue a warrant identifying the property or person to be seized and naming or describing the person or place to be searched.... The warrant shall be directed to a civil officer of the United States authorized to enforce or assist in enforcing any law thereof or to a person so authorized by the President of the United States.... § 3105. Persons authorized to serve search warrant
A search warrant may in all cases be served by any of the officers mentioned in its direction or by an officer authorized by law to serve such warrant, but by no other person, except in aid of the officer on his requiring it, he being present and acting in its execution.
As to what persons are authorized by that rule and statute to serve a search warrant, the United States Court of Appeals for the Fifth Circuit in United States v. Martin, 600 F.2d 1175, 1181 (1979), held:
This statute does not confer any substantive authority to execute a search warrant, but was meant to enlarge the common law rule which required that a search warrant be directed only to a particular person and be executed only by that person. Fed.R.Crim.P. 41(c) and *955 other empowering provisions of the United States Code provide the substantive authority to conduct a federal search. See 18 U.S.C.A. § 3106; United States v. Sigal, 341 F.2d 837, 843 n. 13 (3d Cir.) and cases cited, cert. denied, 382 U.S. 811, 86 S.Ct. 23, 15 L.Ed.2d 60 (1965). Thus, under federal law a search warrant may be executed by (1) the person to whom the warrant is directed; (2) any officer authorized by law to execute search warrants; or (3) some other person aiding a person under (1) or (2) who is present and acting in the execution of the warrant. Furthermore, execution by an unauthorized person would render the search illegal.
In this case FBI agents  officers present, acting in the execution and authorized by law to execute search warrants  were aided by Air Force OSI agents in the execution of the subject search warrant. OSI agents were clearly authorized to aid FBI agents.
Defendant also urges the court on general Fourth Amendment grounds to grant his motion to suppress, but in doing so only urges that the court find the search to be in violation of the Posse Comitatus Act and thus so unreasonable as to warrant Fourth Amendment protection. There being no violation of the Posse Comitatus Act, that contention also fails.
Defendant's motions to suppress and/or dismiss are therefore without merit and DENIED.
SO ORDERED.