# Permissibility Under Posse Comitatus Act of Detail of Defense Department Civilian Employee to the National Infrastructure Protection Center

The proposed detail of a civilian employee of the Department of Defense to the National Infrastructure Protection Center, a component of the Federal Bureau of Investigation, is permissible under the Posse Comitatus Act.

May 26, 1998

MEMORANDUM OPINION FOR THE GENERAL COUNSEL
FEDERAL BUREAU OF INVESTIGATION

This memorandum responds to your request that the Office of Legal Counsel consider the effect of the Posse Comitatus Act ("PCA"), 18 U.S.C. § 1385 (1994), on a proposed staffing and organizational arrangement whereby a civilian employee of the Department of Defense will be detailed to the National Infrastructure Protection Center ("NIPC") to serve in that office as a deputy chief. We conclude that the proposed arrangement is permissible under the PCA.

We draw our understanding of the proposed staffing and organizational arrangement of the NIPC from several discussions that we have had with your office and the Department of Defense and two memoranda that you have sent to us on this matter.[1] The NIPC is a component within the Federal Bureau of Investigation ("FBI") that, we understand, will coordinate and integrate the policy and planning of the United States government in connection with the security of the Nation's computer and information technology infrastructure. In addition, the NIPC will exercise supervision over certain FBI criminal investigations relating to matters of infrastructure security.

Under the organizational plan that you have described to us, the NIPC will be headed by a chief, who will be an official of the FBI. In addition, there will be two deputy chiefs. One deputy chief will be an FBI employee, and this FBI deputy will have supervisory authority over all criminal investigatory matters involving the NIPC. The second deputy chief will be detailed to the FBI from the Department of Defense pursuant to a memorandum of understanding ("MOU") between the two agencies.[2] The MOU will provide that the Defense deputy will have no supervisory authority over criminal investigatory matters. The Defense deputy will supervise other NIPC matters relating, for example, to policy

---

[1] Memorandum for Beth Nolan, Deputy Assistant Attorney General, Office of Legal Counsel, from Larry R Parkinson, General Counsel, Federal Bureau of Investigation, Re Request for Opinion on Certain Posse Comitatus Act Issues (Mar 25, 1998), and Memorandum for Beth Nolan, Deputy Assistant Attorney General, Office of Legal Counsel, from Larry R Parkinson, General Counsel, Federal Bureau of Investigation, Re Supplement to Posse Comitatus Act Opinion Request (Apr 23, 1998)

[2] By virtue of being a detailee to the FBI, the deputy chief from the Department of Defense will be, at least in some regards, an employee of the FBI See infra note 5 For clarity, we refer to him here as the "Defense deputy"

103

and coordination. We further understand that your staffing arrangements call for the detailee from Defense to be a civilian employee of that department. Finally, we understand that in the event of a vacancy for any reason in the position of chief of NIPC, the FBI deputy chief will be first in the order of succession and that under no circumstances will the Defense deputy fill such a vacancy.

## I.

Our review of this proposal begins with the text of the PCA. The PCA prohibits the use of "any part of the Army or the Air Force as a posse comitatus or otherwise to execute the laws." [3] 18 U.S.C. § 1385. The PCA does not, by its terms, apply to Navy or Marine Corps personnel. *Hayes v. Hawes*, 921 F.2d 100, 102–03 (7th Cir. 1990); *Electronic Surveillance Opinion* at 2 n.1.

The Department of Defense has implemented the restrictions of the PCA and related statutes through Departmental Directive 5525.5, "DoD Cooperation with Civilian Law Enforcement Officials" (Jan. 15, 1986). The Directive applies the restrictions of the PCA to the Navy and Marine Corps, as well as the Army and Air Force. Directive 5525.5(B). Unless we indicate otherwise by use of a more specific reference or citation, we use the term "PCA" to refer to the original statute itself, the related statutes, and the implementing Directive of the Department of Defense.

Relevant caselaw and opinions of this Office reflect the view that the PCA is intended to prohibit military personnel from directly coercing, threatening to coerce, or otherwise regulating civilians in the execution of criminal or civil laws. *See, e.g., Allred*, 867 F.2d at 871; *Bissonette v. Haig*, 776 F.2d 1384, 1390 (8th Cir. 1985); *Electronic Surveillance Opinion* at 7; Letter for Deanne Siemer, General Counsel, Department of Defense, from Mary C. Lawton, Deputy Assistant Attorney General, Office of Legal Counsel at 2 (Mar. 24, 1978) (regarding use of military personnel to assist Department of Justice in fraud investigations against contractors for Department of Defense) ("Fraud Investigations Opinion").

In applying this general prohibition, courts and this Office have generally focused on three factors. First, the PCA is violated where civilian law enforcement authorities make "direct active use" of military personnel to execute the laws.

---

[3] The phrase "posse comitatus" translates from Latin as the "power of the county" and was used at common law to refer to local citizens over the age of 15 upon whom a sheriff could call for assistance in preventing any type of civil disorder. *United States v Yunis*, 681 F Supp 891 n.1 (D.D.C 1988) (citations omitted), *aff'd*, 924 F.2d 1086 (D C. Cir. 1991) The PCA was adopted in 1878 in response to objections from southern States to the participation of the United States Army in civilian law enforcement during the Reconstruction period. *United States v Allred*, 867 F.2d 856, 870 (5th Cir. 1989), Memorandum for Jo Ann Harris, Assistant Attorney General, Criminal Division, from Walter Dellinger, Assistant Attorney General, Office of Legal Counsel, *Re: Use of Military Personnel for Monitoring Electronic Surveillance* at 7 (Apr. 5, 1994) (*"Electronic Surveillance Opinion"*)

The PCA has been supplemented by other statutes, 10 U.S C §§ 371–382 (1994 & Supp. II 1996), which authorize military assistance to civilian law enforcement agencies in specific types of matters. Section 375 of title 10 requires the Secretary of Defense to prescribe "such regulations as may be necessary" to ensure that such assistance does not include certain direct participation by military personnel in civilian law enforcement matters, such as conducting searches and seizures or making arrests, *id*. § 375, as would be prohibited by the PCA itself. *See id*. § 378.

*United States v. Red Feather*, 392 F. Supp. 916, 921 (D.S.D. 1975); *see Yunis*, 681 F. Supp. at 892; *Military Use of Infrared Radars Technology to Assist Civilian Law Enforcement Agencies*, 15 Op. O.L.C. 36, 45–46 (1991); *Fraud Investigations Opinion* at 11, 15.

Second, the PCA may be violated when the use of military personnel pervades the activities of civilian law enforcement. *Hayes*, 921 F.2d at 104; *United States v. Bacon*, 851 F.2d 1312, 1313 (11th Cir. 1988); *United States v. Hartley*, 796 F.2d 112, 114 (5th Cir. 1986); *United States v. Hartley*, 678 F.2d 961, 978 (11th Cir. 1982); *Yunis*, 681 F. Supp. at 892; *United States v. Jaramillo*, 380 F. Supp. 1375 (D. Neb. 1974), *appeal dismissed*, 510 F.2d 808 (8th Cir. 1975); *Electronic Surveillance Opinion* at 9 (citing Yunis).

Third, the PCA prohibits military authorities from subjecting civilians to military regulations, proscriptions, or compulsions. *United States v. McArthur*, 419 F. Supp. 186 (D.N.D.1975), *aff'd sub nom. United States v. Casper*, 541 F.2d 1275 (8th Cir. 1976); *Yunis*, 681 F. Supp. at 892; 15 Op. O.L.C. at 45–46; *see also Bacon*, 851 F.2d at 1313 (citizenry may not be subjected to the "regulatory exercise of military power"); *Bissonette*, 776 F.2d at 1390 (military may not actually regulate, forbid or compel some conduct by civilians).

Military personnel may assist in civilian law enforcement where the participation does not run afoul of the factors identified above. *See, e.g., United States v. Stouder*, 724 F. Supp. 951, 953 (M.D. Ga. 1989) (Air Force personnel may assist in conduct of FBI investigation); *Electronic Surveillance Opinion* at 9 (military personnel may monitor electronic surveillance transmissions for use in civilian law enforcement); *Fraud Investigations Opinion* at 13–15 (military personnel may provide advice to FBI investigation and share relevant information). Thus, this Office has previously concluded that the PCA, although prohibiting direct interaction between the military and civilian personnel in most circumstances, permits a broad degree of cooperation between the military and civilian law enforcement. 15 Op. O.L.C. at 46 (citing legislative history of 10 U.S.C. §§ 371–382). More specifically, the PCA does not bar "military expert advice or technical assistance to civilian authorities." *Fraud Investigations Opinion* at 11. Such expert advice and technical assistance does not "create the danger of military compulsion of civilians," which Congress sought to prohibit through the PCA. *Id.; see also Bissonette*, 776 F.2d at 1390 (distinguishing between military assistance and support for civilian law enforcement from active participation that would constitute military compulsion of civilians).

In addition, where the military has "a legitimate interest" for its own proceedings or matters involving the "internal administration [of the military] or the performance of its proper functions," the military may participate, to the extent

of its interest, in civil law enforcement.[4] *Fraud Investigations Opinion* at 12, 14; *see, e.g., Bacon,* 851 F.2d at 1313 (military may aid civilian law enforcement investigation into illegal drug sales to "both civilians and army personnel"); *Fraud Investigations Opinion* at 13–15 (military may assist and participate in investigation into fraud by military contractors). Nothing in the PCA suggests that Congress intended to circumscribe military participation in legitimately military matters. *Id.* at 12–13.

## II.

The staffing and organizational arrangements that you have proposed are permissible under the PCA because a civilian employee of the Department of Defense would not fall within the statutory or regulatory scope of the PCA.[5] By its plain terms, the PCA applies only to personnel who are "part" of the Army or Air Force. 18 U.S.C. § 1385 (unlawful to use "any part of the Army or Air Force as a posse comitatus to execute the law"); *see also Bacon,* 851 F.2d at 1313 (applying PCA to "military personnel"); *Hartley,* 796 F.2d at 114 (same); *Bissonette,* 776 F.2d at 1389 (applying PCA to "Army or Air Force personnel"); *Yunis,* 681 F. Supp. at 892 (applying PCA to "military personnel"); *see also Transportation Opinion* at 2 (military personnel detailed to civilian agency are not "part" of the military and not subject to PCA); 10 Op. O.L.C. at 121 (PCA does not apply to military personnel functioning in civilian capacity under civilian command); *cf.* Memorandum for Jamie Gorelick, Deputy Attorney General, from Walter Dellinger, Assistant Attorney General, Office of Legal Counsel, *Re: Use of Military to Enforce Immigration Laws* at 9–10 (May 10, 1994) (distinguishing between "employees of the United States" and "members of the Armed Forces"). Similarly, the Defense Directive, extending the statutory restrictions to

---

[4] Conversely, the PCA prohibits military personnel in law enforcement matters "that were of concern only to the civil authorities " *Fraud Investigations Opinion* at 14 Military participation in such matters is impermissible because it would run afoul of the first factor in the PCA analysis, the direct active use of the military in civilian law enforcement. *See id.*

[5] Earlier opinions of this Office concluded that military personnel who are detailed to a civilian agency are not covered by the PCA because they are employees of the civilian agency for the duration of their detail, "subject to the exclusive orders" of the head of the civilian agency, and therefore "are not 'any part' " of the military for purposes of the PCA Memorandum for Benjamin Forman, Assistant General Counsel, Department of Defense, from William H. Rehnquist, Assistant Attorney General, Office of Legal Counsel, *Re Legality of deputizing military personnel assigned to the Department of Transportation* (Sept. 30, 1970) ("Transportation Opinion") (military personnel detailed to the Department of Transportation to serve as security guards on civilian aircraft), *see Assignment of Army Lawyers to the Department of Justice,* 10 Op. O.L.C. 115, 121 (1986) (PCA "would not be implicated if [Army] lawyers were detailed on a full-time basis    . in an entirely civilian capacity under the supervision of civilian personnel")

The proposed duties of the Defense deputy, unlike those addressed in the opinions cited above, will involve supervisory authority and the formulation of policy As a result, it is not settled whether the rule reflected in these earlier opinions—that military personnel detailed to a civilian agency are not covered by the PCA—would apply to a military officer detailed to the NIPC as a deputy chief. We do not rely, however, upon the status of the Defense deputy as a detailee for our conclusion in this opinion because we find that the fact that the Defense deputy will be a civilian employee of the Department of Defense makes the proposed arrangement permissible under the PCA. Thus, we have not resolved—and we do not address here—whether or not the PCA would permit a detailed military officer to serve as an NIPC deputy chief

the Navy and Marine Corps, excludes from its scope civilian employees of the Department. Directive 5525.5(B)(3) (restrictions do not apply to a "civilian employee of the Department of Defense").[6] This Office has distinguished between civilian and military personnel by applying the PCA to "persons subject to military discipline." *Fraud Investigations Opinion* at 11.

In addition, the bifurcated structure of the NIPC and the particular duties to be assigned under the proposed arrangement appear to make it unlikely that the Defense deputy will "execute the laws" as that term is understood in the context of the PCA. Because the status of the Defense deputy as a civilian employee provides an independent basis for concluding that the proposed arrangement is permissible under the PCA, we do not resolve whether the structure of the NIPC and the duties of the Defense deputy provide an alternative basis for concluding that the proposed arrangement satisfies the PCA. Nonetheless, several considerations suggest that the proposed Defense deputy position, as you have described it, would be consistent with the PCA, independent of the civilian status of the occupant.[7]

The NIPC is structured so that the duties of the Defense deputy are separated from the oversight, control and conduct of NIPC criminal investigations. Thus, the actions that the Defense deputy will take appear unlikely to fall within the prohibitions of the PCA. The Defense deputy will have no direct or active involvement in criminal investigations. Moreover, the separation of the Defense deputy from criminal investigations diminishes the possibility that part of the military would "pervade" the civilian investigations effort. Finally, given the bifurcated structure, it seems unlikely that the Defense deputy would be in a position to engage in civilian law enforcement activities that would subject the citizenry to military power.[8]

The duties of the Defense deputy appear to correspond with those responsibilities that this Office previously has found to be consistent with the requirements of the PCA. As we understand it from your descriptions, the role of the Defense deputy in connection with the development of policy and planning in the NIPC appears consistent with the provision of expert advice to civilian law enforcement authorities. *See Fraud Investigations Opinion* at 12. Moreover, the planning and coordination function of the Defense deputy appears to fit squarely with the earlier

---

[6] The exception for civilian employees does not extend to civilian employees who are "under the direct command and control of a military officer." Directive 5525.5(B)(3) We understand that the civilian employee to be detailed in connection with the NIPC deputy chief position will not be an individual from a component within the Department of Defense that is headed by a military officer Thus, the Defense deputy will be a civilian employee within the meaning of the Directive

[7] Because our assessment in this regard is not determinative, in the event that the Defense deputy position were filled by a member of the military, and thus someone potentially subject to the prohibitions of the PCA while at the NIPC, *see supra* note 5, we would require a detailed examination of the relevant structure and duties to determine whether they fully satisfy the requirements of the PCA

[8] Because the proposed bifurcated structure appears to remove the Defense deputy from criminal investigative matters so completely, we have no occasion here to address the extent to which the PCA might permit the participation of the Defense deputy in the law enforcement duties of the NIPC.

observation of this Office that the PCA permits extensive cooperation between military and civilian officials without direct military participation in law enforcement. 15 Op. O.L.C. at 46.

In addition, we understand that the military has a significant interest.in the maintenance of infrastructure security in connection with the operation of the Nation's defense systems and the prevention of hostile acts against the United States. Thus, the Defense deputy's involvement in the NIPC will advance legitimate military ends, thus satisfying one of the considerations that we have looked to in determining the applicability of the PCA. *See, e.g., Fraud Investigations Opinion* at 16 (concluding that the PCA permits military assistance to civilian law enforcement regarding matters related to the Department of Defense).

## III.

Because the proposed deputy chief of the NIPC to be detailed to the FBI from the Department of Defense will be a civilian employee, the proposed arrangement is permissible under the PCA. In addition, the separation of the Defense deputy from the oversight and conduct of criminal investigations, although not a basis for our conclusion in this opinion, also appears to be consistent with the requirements of the PCA.

WILLIAM MICHAEL TREANOR
*Deputy Assistant Attorney General*
*Office of Legal Counsel*